O

# United States District Court
# Central District of California

| | |
|---|---|
| MUNCHKIN, INC., <br><br> Plaintiff, <br><br> v. <br><br> LUV N' CARE, LTD.; ADMAR INTERNATIONAL, INC., <br><br> Defendants. | Case No. 2:13-cv-07228-ODW(AGRx) <br><br> **CLAIM-CONSTRUCTION ORDER** |

## I. INTRODUCTION

In this patent-infringement suit, the Court concerns itself with the "technology" of baby blankets—specifically, baby blankets designed to aid an infant in teething. The patent-in-suit is U.S. Patent No. 6,292,962 (the '962 Patent), which Plaintiff Munchkin, Inc. asserts against Defendants Luv N' Care, Ltd. and Admar International, Inc. (collectively, "LNC"). As a first step in determining infringement, the Court must construe the essential terms of the patent. After considering the parties' claim-construction briefs, the Court finds oral argument unnecessary and construes the disputed claim terms as set forth below. Fed. R. Civ. P. 78; L.R. 7-15.

## II. BACKGROUND

Munchkin initiated this patent-infringement action against LNC on September 30, 2013. (ECF No.1.) In responding to the Complaint, LNC has asserted several defenses, including invalidity and non-infringement. (ECF No. 16.)

1    Munchkin is the assignee of the '962 Patent titled "Infant Blanket with
2 Teether/Pacifier." Claims 1, 4, 5, and 8 of the '962 Patent are at issue in this action.
3 (Munchkin Br. 2:25–27.) Claims 1 and 4 are apparatus claims, while claims 5 and 8
4 are method claims. The asserted claims are directed to the design and function of a
5 small blanket or towel with an attached oral element for an infant to use when
6 teething. (*See* '962 Patent 1:42–45.)
7    The parties dispute the construction of three terms: (1) "corner";
8 (2) "permanently secured"; and (3) "teething element." Claim 1 is illustrative of the
9 disputed terms and reads as follows:
10   1. An infant product, comprising:
11   a substantially two-dimensional flexible fabric material having a surface
12     area that is greater than about 25 square inches, said flexible fabric
13     material having a front side, a back side and a plurality of side edges
14     that intersect so as to define at least two **corners**;
15   a first **teething element** that is **permanently secured** to a first of said at
16     least **corners**, said first **teething element** being fabricated from a
17     material selected from the group consisting of plastic and rubber, said
18     first **teething element** having at least one non-smooth textured
19     surface thereon and being fabricated from a non-toxic material and
20     being sized and dimensioned to be comfortably inserted and partially
21     retained within an infant's mouth for teething purposes; and
22   a second **teething element** that is **permanently secured** to a second of
23     said at least **corners** and that is separate from said first **teething
24     element**, said second **teething element** also being fabricated from a
25     material selected from the group consisting of plastic and rubber, said
26     second **teething element** also having at least one non-smooth textured
27     surface thereon and also being fabricated from a non-toxic material and
28   / / /

2

1 being sized and dimensioned to be comfortably inserted and partially
2 retained within an infant's mouth for teething purposes.

3 ('962 Patent 4:50–5:8 (emphasis added).)

### III. LEGAL STANDARD

The purpose of claim construction is to determine the meaning and scope of the patent claims alleged to be infringed. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). Claim construction is a question of law to be decided by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).

In general, claim terms are "given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed Cir. 2005) (en banc)).

"[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. But claims "must be construed in light of the appropriate context in which the claim term is used." *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013). This is why the specification is "highly relevant" in claim construction and the "single best guide" for construing ambiguous claim terms. *Phillips*, 415 F.3d at 1315. Nevertheless, a court must be wary of "improperly importing a limitation from the specification into the claims." *Retractable Techs., Inc. v. Becton*, 653 F.3d 1296, 1305 (Fed. Cir. 2011). Also relevant to claim construction is a patent's prosecution history, although it "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.

In addition, courts may consider extrinsic evidence in claim construction. *Id.* For example, dictionaries may aid the court "in determining the meaning of particular terminology to those of skill in the art." *Id.* at 1318. But while extrinsic evidence can

shed light on claim meaning, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* (internal quotation marks omitted).

There are two circumstances under which a court will not give a term its plain and ordinary meaning. First, a patentee can depart from the plain and ordinary meaning by acting as his own lexicographer. *Thorner*, 669 F.3d at 1365. To act as his own lexicographer, the patentee "must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning." *Id.* "It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must clearly express an intent to redefine the term." *Id.* (internal quotation marks omitted). An "'implied' redefinition must be so clear that it equates to an explicit one." *Id.* at 1368. Second, a patentee can depart from the plain and ordinary meaning by clearly "disavow[ing] the full scope of a claim term either in the specification or during prosecution." *Id.* at 1365. "The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).

## IV. DISCUSSION

Munchkin puts forth proposed constructions for the three disputed claim terms, relying solely on the language of the claims and the patent's specification. LNC, on the other hand, argues that "no construction is necessary" and the disputed terms should be given their plain and ordinary meaning. LNC offers dictionary definitions of the words in each disputed claim term to support adoption of the terms' plain and ordinary meanings.

**A. "corner"**

Munchkin argues that the proper construction of "corner" is "a portion of the flexible fabric material containing the intersection of two or more of the material's

1    side edges." (Munchkin Br. 5:11–12.) According to Munchkin, the term "corner" is
2    used throughout the asserted claims to not only denote where the edges of the blanket
3    come to a point, but to also describe where the invention's teething element attaches
4    to the blanket. (*Id.* at 5:26–6:9.) Munchkin then turns to the specification to argue
5    that the teething element attaches to more than a single point where the side edges
6    meet; it can instead be attached along the side edges extending out from that point as
7    well as inward from that point. (*Id.* at 6:10–7:10; '962 Patent, Figs. 1–6.) Given that
8    the teething element does not need to be attached to the single point where the side
9    edges actually meet, Munchkin contends that "corner" is used in the claims "to
10   reference a broader portion of the flexible fabric material." (*Id.* at 7:1–22.)

11   On the other hand, LNC opposes Munchkin's proposed construction of "corner"
12   because the '962 Patent states that claim terms are to be understood according to their
13   "broad general meaning" and at least one embodiment in the specification contradicts
14   Munchkin's rationale for its proposed construction. (LNC Br. 1–2:21; '962
15   Patent 4:41–49, Fig. 7.) In Figure 7 of the '962 Patent, the teething element appears
16   to attach in the center of the blanket and nowhere near where the side edges of the
17   blanket meet at a rounded edge. ('962 Patent, Fig. 7.) Instead, LNC asks the Court to
18   adopt the plain and ordinary meaning of "corner," which the Merriam-Webster
19   Dictionary defines as "the point or area where two lines, edges, or sides of something
20   meet." (LNC Br. 3:1–11.)

21   After reviewing the parties' arguments, the Court finds no reason to deviate
22   from the plain and ordinary meaning of "corner." The Court further finds no reason to
23   rely on a dictionary, as the term is a common word familiar to all English speakers.

24   Munchkin relies on a selective reading of the patent specification for its
25   proposed construction that is based on "corner" serving two purposes—as the location
26   where the edges meet and as the location where the teething element attaches. But
27   Figure 7 of the '962 Patent clearly contradicts Munchkin's reading of the
28   specification:



FIG. 7

Moreover, Munchkin cannot point to anywhere in the specification that shows a clear disavowal or redefinition of "corner" to persuade the Court to overcomplicate the simple term "corner" and adopt a construction other than its plain and ordinary meaning. *See Thorner*, 669 F.3d at 1365. In addition, Munchkin's main concern with construction of the term "corner" is that it should encompass more than a single point where the edges meet. Yet the parties agree that the meaning of "corner" includes the point *or area* where the edges meet as evidenced by LNC's citation to the term's lay dictionary definition.

For the reasons discussed above, the Court finds that the term "corner" shall have its plain and ordinary meaning.

**B.  "permanently secured"**

Munchkin proposes that the Court construe the term "permanently secured" to mean "directly affixed so as to overlap at least a portion of that to which it is affixed

and not be easily de-attachable without the use of tools." (Munchkin Br. 5:12–14.) According to Munchkin, the specification informs the meaning of the term and all of the descriptions of the embodiments reveal that the teething element must necessarily overlap the material. (*Id.* at 7:24–9:19.) Munchkin also relies on descriptions of embodiments where the teething element is detachable from the blanket. (*Id.* at 9:19–28; '962 Patent 3:40–45 ("The pacifier . . . can be easily attached to the flexible material and easily de-attached from the flexible material (without the use of tools) by snapping the snap into the snap retainer opening.").) Munchkin's contention is that a teething element that is easily detachable is the opposite of one that is "permanently secured"; thus, the Court should adopt the language of the specification describing an easily detachable teething element in the negative—i.e., "not be easily de-attachable without the use of tools."

The Court finds that Munchkin's proposed construction of "permanently secured" is problematic. With respect to the necessity that the teething element "overlap" the material, Munchkin impermissibly seeks to read the embodiments into the claim term. *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("[W]e do not read limitations from the embodiments in the specification into the claims."); *Thorner*, 669 F.3d at 1368 ("[D]isclosing embodiments that all use the term the same way is not sufficient to redefine a claim term."). The '962 Patent contains "no words of manifest exclusion or restriction" as it relates to the disputed term "permanently secured" or the embodiments described in the specification. *Hill-Rom Servs.*, 755 F.3d at 1372. Moreover, Munchkin attempts to define the modifier "permanently" by pointing to what it contends is the opposite of "permanent" in the specification, but this is far from sufficient to demonstrate that the patentee was acting as his own lexicographer. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (stating that a patentee "must clearly set forth a definition of the disputed claim term").

/ / /

1    The Court cannot find the word "permanent" or the disputed term "permanently 2 secured" anywhere in the specification. As LNC argues in opposition to Munchkin's 3 proposed construction, this is strong evidence that the term "permanently secured" has 4 no specialized or alternative meaning. *See Thorner*, 669 F.3d at 1365–66 (holding 5 that a patentee must clearly express an intent to redefine a term or clearly disavow the 6 ordinary meaning of a term and the claim scope). The Court thus adopts the plain and 7 ordinary meaning of the term "permanently secured."

**C.    "teething element"**

Unlike the previous two disputed claim terms, Munchkin's arguments in favor of its proposed construction of "teething element" are more persuasive. Munchkin proposes that the term be construed as "an element that is: separate from the flexible fabric material; made from a non-toxic material; and sized and dimensioned to be comfortably inserted and partially retained within an infant's mouth for teething purposes." (Munchkin Br. 5:14–16.)

Munchkin contends that the patentee chose to be a lexicographer, and the '962 Patent specification acts as a dictionary. (*Id.* at 10:7–16); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The specification reads, "[t]he term 'teething element' is meant to be broadly interpreted to include all elements made from a non-toxic material, sized and dimensioned to be comfortably inserted and partially retained within an infant's mouth for teething purposes." ('962 Patent 3:2–6.) According to Munchkin, it is also clear that the "teething element" is separate and apart from the flexible fabric of the blanket itself. (Munchkin Br. 10:17–11:8.) The claims themselves describe the teething element as apart from the fabric, requiring it to be attached or "permanently secured" to the fabric. (*See, e.g.*, '962 Patent 4:50–5:9.) Moreover, in describing the invention, the patent's abstract and summary refer to two separate parts—"a small blanket or towel having the oral element attached directly thereto." (*Id.* at 1:42–45.) Four of the patent figures
/ / /

1 also depict the "teething element" alone, entirely separate from the flexible fabric.
2 (*Id.* at Figs. 2–5.)

3 In opposing Munchkin's proposed construction, LNC once again asks the Court to simply adopt the plain and ordinary meaning of "teething element." LNC argues that the patentee was not engaging in lexicography in the specification, but merely indicating that the term should be interpreted broadly. (LNC Br. 4:18–5:3.) LNC then turns to the Merriam-Webster Dictionary definitions of the words "teething" and "element" to argue that the proper definition of "teething element" is "a chewable device to assist in the eruption of a baby's teeth." (*Id.* at 5:5–15.)

10 The Court finds that Munchkin's proposed construction of "teething element" is supported by the claims themselves and the specification. Unlike the previous two disputed terms, the specification includes clear and explicit language that the patentee intended the term "teething element" to be construed as Munchkin proposes. In addition, Munchkin's proposed construction does not require the Court to make any inferences from the language of the specification. The words used in Munchkin's proposed construction are lifted directly from the specification and clearly describe the "teething element." It is true, as LNC argues, that the term "teething element" is meant to be construed broadly. But the Court finds that Munchkin's proposed construction is broad and does not impermissibly narrow the claim term. Accordingly, the Court adopts Munchkin's proposed construction of the term "teething element."

22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## V. CONCLUSION

The Court adopts the following constructions of the disputed terms:

| Claim Term | Claim Construction |
|---|---|
| 1. "corner" | Plain meaning as discussed in Part IV-A |
| 2. "permanently secured" | Plain meaning as discussed in Part IV-B |
| 3. "teething element" | "an element that is: separate from the flexible fabric material; made from a non-toxic material; and sized and dimensioned to be comfortably inserted and partially retained within an infant's mouth for teething purposes" |

**IT IS SO ORDERED.**

September 12, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**