Robert M. Ward
rward@dilworthip.com
DILWORTHIP
2 Corporate Drive, Suite 206
Trumbull, CT 06611
Tel. No.: (203) 220-8496
Fax No.:  (203) 220-8497

Daniel M. Livingston, Bar No. 105981
dml@paynefears.com
Eric M. Kennedy, Bar No. 228393
emk@paynefears.com
PAYNE & FEARS LLP
801 South Figueroa Street. Suite 1150
Los Angeles, CA 90017
Tel. No.:  (213) 439-9911
Fax No.:  (213) 439-9922

Attorneys for Defendants LUV N' CARE, LTD.
and ADMAR INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

|  |  |
|---|---|
| MUNCHKIN, INC., a Delaware corporation,<br><br>       Plaintiff,<br><br>     v.<br><br>LUV N' CARE, LTD., a Louisiana corporation, and ADMAR INTERNATIONAL, INC., a Delaware corporation,<br><br>       Defendants. | Case No. 13-cv-07228-ODW-AGR<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT MOTIONS**<br><br>Hearing Date:     Dec. 15, 2014<br>Time:            1:30 p.m.<br>Place:<br><br>Discovery Cut-Off:   Dec. 1, 2014<br>Pre-trial Conference:  Feb. 9, 2015<br>Trial:             March 3, 2015 |

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .................................................................................1

II.    STATEMENT OF FACTS .....................................................................2

       A.    Facts Relevant To Invalidity of The '962 Patent ........................2

       B.    Facts Relevant To Laches ..........................................................8

III.   ARGUMENT .........................................................................................9

       A.    Invalidity for Obviousness .......................................................10

       B.    Analysis ...................................................................................11

             1.    *The Scope and Content of the Prior Art* .........................11

             2.    *Differences Between the Prior Art and the Claimed Invention* .................................................................12

                   a.    *Suggestion to combine* ........................................13

                   b.    *Predictable Combination* ....................................14

             3.    *The Level of Ordinary Skill in the Pertinent Art* ...........16

             4.    *Secondary Considerations* .............................................17

       C.    Munchkin Had Constructive Knowledge of LNC's Alleged Infringement of The '962 Patent More Than Six Years Before Filing The Complaint Giving Rise to a Presumption of Laches...........18

             1.    *LNC's BP & PM Blankets Were Openly Displayed in Stores to Potential Customers* .....................................19

             2.    *LNC's Sale of The BP & PM Blankets in The Market, Including in Walmart, Put Munchkin on Constructive Notice of LNC's Allegedly Infringing Activity*...........................20

             3.    *Munchkin's Previous Assertion of IP Rights Against LNC*.........22

             4.    *More Than Six Years Have Elapsed Since Munchkin Had Constructive Knowledge of The Sales of LNC's BP & PM Blankets*.........................................................23

             5.    *LNC Has Suffered Prejudice on Presenting a Full and Fair Defense of Laches*.................................................24

IV.    CONCLUSION .....................................................................................25

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

# TABLE OF AUTHORITIES

**Page**

Cases

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
960 F.2d 1020 (Fed. Cir. 1992) (en banc) .................................................. 18, 19

*Am. Hoist & Derrick Co. v. Sowa & Sons*,
725 F.2d 1350 (Fed. Cir. 1984) ...........................................................17

*Autogiro Co. of Am. v. U.S.*,
181 Ct.Cl. 55, 384 F.2d 391 (1967) ...........................................................13

*Custom Accessories, Inc. v. Jeffrey-Allan Indust., Inc.*,
807 F.2d 955 (Fed. Cir. 1986)...........................................................16

*Eben Co., LLC v. Schaefer*,
2013 WL 5727421 (S.D. Cal. Oct. 22, 2013) ......................................24

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
849 F.2d 1430 (Fed. Cir. 1988) ...........................................................13

*Environmental Designs, Ltd. V. Union Oil Co.*,
713 F.2d 693, 696 (Fed. Cir. 1983) ...........................................................16

*Graham v. John Deere Co. of Kansas City*,
383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)............................ 10, 12, 17, 18

*Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp.*,
340 U.S. 147; 71 S.Ct. 127, 95 L.Ed. 162 (1950).........................................14-15

*Hall v. Aqua Queen Manufacturing, Inc.*,
93 F.3d 1548 (Fed. Cir. 1996) ...................................................... 18, 19, 21, 24

*In re Berg*,
320 F.3d 1310 (Fed. Cir. 2003) ...........................................................16

*In re* Clay,
966 F.2d 656 (Fed. Cir. 1992)...........................................................11

*In re Conte*,
36 Fed.Appx. 446 (Fed. Cir. 2002) ...........................................................11

*In re* GPAC,
57 F.3d 1573 (Fed. Cir. 1995)...........................................................16

*In re Kahn*,
441 F.3d 977 (Fed. Cir. 2006)...........................................................13

*In re Wood*,
599 F.2d 1032 (C.C.P.A.1979) ...........................................................11

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

*KSR Int'l Co. v. Teleflex, Inc.,*
    550 U.S. 398, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007)............................ *passim*

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995)...........................................................13

*Moba, B.V. v. Diamond Automation, Inc.,*
    325 F.3d 1306 (Fed. Cir. 2003) ........................................................10

*Newell Cos., Inc. v. Kenney Mfg. Co.,*
    864 F.2d 757, 768 (Fed. Cir. 1988) ...................................................17

*PharmaStem Therapeutics, Inc. v. Viacell, Inc.,*
    491 F.3d 1342 (Fed. Cir. 2007) ........................................................10

*PowerOasis, Inc. v. T-Mobile USA, Inc.,*
    522 F.3d 1299 (Fed. Cir. 2008) ........................................................17

*Reese v. TracFone Wireless, Inc.,*
    2014 WL 1872175, *2 (C.D. Cal. May 9, 2014) ......................... 9, 21, 22

*Richardson-Vicks v. Upjohn Co.,*
    122 F.3d 1476 (Fed. Cir.1997)..........................................................17

*Ryko Mfg. Co. v. Nu-Star, Inc.,*
    950 F.2d 714 (Fed. Cir. 1991)...........................................................17

*Simmons Fastener Corp. v. Ill. Tool Works, Inc.,*
    739 F.2d 1573 (Fed. Cir. 1984) ........................................................17

*Sjolund v. Musland,*
    847 F.2d 1573 (Fed. Cir. 1988) ........................................................17

*United States v. Adams,*
    383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966)..............................15

*Velander v. Garner,*
    348 F.3d 1359 (Fed. Cir. 2003) ........................................................12

*Wanless v. General Electric Co.,*
    148 F.3d 1334 (Fed. Cir. 1998) ................................................. 21, 22

*W.L. Gore & Assoc., Inc. v. Garlock, Inc.,*
    721 F.2d 1540 (Fed. Cir. 1983) ........................................................13

*Wollensak v. Reither,*
    115 U.S. 96, 5. S.Ct. 1137 (1885)......................................................22

*Yamanouchi Pharm. Co.; Ltd. v. Danbury Pharm., Inc.,*
    231 F.3d 1339 (Fed. Cir. 2000) ........................................................14

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

Federal Statutes

35 U.S.C. § 103........................................................................ 1, 10, 14

35 U.S.C. § 282................................................................................10


Federal Rules of Civil Procedure

Fed. R. Civ. P. 56...........................................................................1, 10


Other Authorities

CHISUM ON PATENTS, § 5.03[5], 5-239 (2003)....................................12

MPEP § 804.02................................................................................13

MPEP § 2141 ..................................................................................17

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

# I.     INTRODUCTION

Defendants Luv n' care, Ltd. and Admar International, Inc. (collectively "LNC"), pursuant to Fed. R. Civ. P. 56, move for entry of summary judgment on two issues.  First, LNC seeks summary judgment that U.S. Patent No. 6,292,962 (the "'962 patent") is invalid for obviousness pursuant to 35 U.S.C. § 103.  Second, LNC seeks summary judgment that laches precludes Plaintiff Munchkin, Inc. ("Munchkin") from recovering damages for alleged infringement of the '962 patent before the September 30, 2013 filing date of the Complaint.

It is appropriate on the unique facts of this simple case to render summary judgment of invalidity for obviousness.

Munchkin's '962 patent is directed to (1) a baby blanket, with (2) teething elements, (3) affixed <u>to the corners</u>.  After the '962 patent issued, Munchkin filed a continuation application, containing nearly the same claims – i.e., drawn to (1) a baby blanket, with (2) teething elements, (3) affixed <u>to the sides</u> of the blanket, rather than specifically at the corners.

Next in the patent prosecution, these very similar claims were rejected for "double-patenting."  Munchkin filed a terminal disclaimer which is an admission as a matter of law that these patent claims are only obvious variations of the original '962 patent claims and, thus, are not separately patentable thereover.

The Examiner then cited <u>new</u> prior art, which teaches each of the claim elements of (1) a baby blanket, with (2) teething elements, (3) affixed <u>to the corners</u>, and rejected all of the pending claims.  Whereupon, Munchkin abandoned the continuation application claims.

More than a decade later, Munchkin filed suit on the '962 patent claims - *i.e.,* the claims that had been invalidated by inference via the Examiner's rejection of the nearly identical continuation application claims.  Manifestly, had this newly cited prior art been before the Examiner <u>originally</u>, the '962 patent would not have issued.

On the issues of laches, Munchkin is chargeable with constructive knowledge

that its direct competitor LNC had been marketing similar baby teething blankets in major national retailers for at least 12 years giving rise to a presumption of prejudice in LNC's favor.   The prejudice resulting from Munchkin's unreasonable and inexcusable delay is so substantial that LNC is unable to provide a full and fair defense on the merits of Munchkin's patent infringement claim or, for that matter, on the merits of the laches defense.

## II.    STATEMENT OF FACTS

### A.    Facts Relevant To Invalidity of The '962 Patent

In this very unusual case, invalidity of the asserted patent claims for obviousness under 35 USC §103 is premised upon Munchkin's prosecution of subsequent patent applications before the United States Patent and Trademark Office ("PTO").   A detailed exposition of these prosecution facts is set forth in the accompanying Separate Statement of Uncontroverted Facts in Support of Defendants' Summary Judgment Motions ("UF').

Because expert testimony can be significant in assessing obviousness, the Expert Report[1] of Edward D. Manzo, Esq. is also submitted which provides extensive details of the prosecution history of the invalid '962 patent claims.

Accordingly, as the full Record is available to the Court, the emphasis of the factual statements set forth in this brief, *per se*, is upon:

- the citation of new prior art not before the Examiner in his original examination of the issued '962 patent claims;
- the content of this new prior art;
- the lack of any substantial difference between the new prior art and the rejected claims that were nearly identical to the claims that improvidently issued (i.e., in the absence of such prior art) in the '962 patent; and
- the inescapable logic and reasoning applied by the Examiner.

Munchkin had abandoned its original patent application, and its second patent application (serial number 09/471,728) issued as the '962 patent.  (UF 1, 2).

---

[1]  The Exhibits identified herein are as denominated in the Expert Report.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

Munchkin filed a third continuation patent application (serial number 09/929,600) on August 14, 2001.  Claim 1 of this application was directed to an infant product having the flexible fabric material as before, and with the same first and second teething elements, but instead of reciting that they were located **at the corner** (as in the issued '962 patent claims), these claims recited that they were at first and second portions of the **peripheral side edge.**  Examiner Conley indicated the allowability of claims directed to the hardness of the teething material, but rejected all of the other claims over the prior art, including the Sofia U.S. Patent No. 5,993,285.  With regard to Sofia, the Examiner found, "Sofia discloses a method of teething comprising button on first and second plastic teething elements (22A, 22b, 24a, 24b) with different textured surface patterns (col. 2, lines 58-68) secured to a flexible material 12."  (UF 3).

The portion of Sofia specifically referenced by Examiner Conley states, as follows.

> Teething device 10 also includes two pairs of elastomeric teething tabs 22a, 22b and 24a, 24b, each pair being positioned so that one teething tab extends on each side of each of the apertures 18, 20.  The teething tabs are formed of any resilient material suitable for use in teething devices, e.g., PVC, and are positioned to allow the infant to chew easily on the tabs while the device is being worn.  Preferably, as shown, the teething tabs include ridges 26 and/or bumps 28 and rim 30, to stimulate chewing and massage the infant's gums during teething. (Sofia USP 5,993,285 Col. 2 lines 58-et seq.)  (UF 4).

In response, Munchkin abandoned this third continuation patent application.  (UF 5).

On April 30, 2002, Munchkin filed a fourth application (serial number 10/135,111) seeking the same broad claims calling for teething elements which cover a peripheral edge of a flexible material (claim 1).  (UF 6).  In summary, this was a vigorously contested prosecution that resulted in not only a concession by Munchkin that the claims of this patent application were <u>not</u> patentably distinct from the claims it had already received in the '962 patent, but also that these claims were obvious over newly-discovered prior art that had not previously been considered (the Agopian patent).  (UF 6).

Examiner Conley then rejected all of the claims (1-10) for double patenting, and claims 5–6 and 8–9 as obvious over Sofia, which teaches a method of teething as claimed.  He further rejected claims 1-2 and 4 as obvious over Xiques in view of Sofia.  He again indicated the allowability of the "hardness" claims.  (UF 7).  In response, Munchkin added new claims 11–26, and filed a Terminal Disclaimer.  (UF 8).

On May 13, 2003, Examiner Conley issued a Final Rejection rejecting claims as obvious over Sofia, and rejecting still other claims as obvious over Xiques in view of Sofia.  (UF 9).

After an appeal had been filed, on December 30, 2003 Examiner Conley issued a non-final rejection rejecting claims 1-2, 4, 11-15, and 19 as obvious over a new citation, Agopian, U.S. Design Patent No. 385,453, entitled "Teething Blanket" (Exhibit J), and specifically that these claims were unpatentable over the combination of Agopian in view of Sofia (Exhibit I) and Sachetti U.S. Patent No. 5,018,232 (Exhibit K).  These rejected claims are directed to a structure having the following elements:

 i.  a substantially planar flexible fabric material having a surface area greater than about 25 square inches and having front and back sides and a peripheral edge;
 ii.  a first teething element that is generally flat and generally coplanar with the fabric material.  It must be permanently secured to the fabric material to cover a first portion **of the peripheral side edge.**  The first teething element must be fabricated from plastic or rubber and have at least one non-smooth textured surface on it.  It also must be fabricated from a non-toxic material and be sized and dimensioned to be comfortably inserted and partially retained in an infant's mouth for teething purposes; and
 iii.  a second teething element having the same recited features as the first teething element but secured to a second portion **of the peripheral side edge** of the fabric. (emphasis added).  (UF 10).

In examining these claims, the Examiner found each of the claim elements in the prior art, and that the combination of these elements would have been obvious.  He therefore rejected the claims as not patentable over the prior art.  (UF 12).

With respect to the impact of Agopian upon pending claims 1 and 11-15, Examiner Conley found unambiguously, as follows:

-4-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

In reference to claims 1 and 11–15, Agopian discloses an infant product comprising:

a substantially planar blanket having a surface area, said blanket having a front side, a backside and at least one peripheral side edge;

a first teething element being generally flat in shape, and generally coplanar with the blanket that is permanently secured to said blanket [sic, teething element] so as to cover a first portion of said peripheral side edge.  Agopian fails to disclose a second teething element constructed from a non-toxic plastic material.  Sofia discloses an infant product having first and second teething elements (22a, 22b) having at least one non-smooth textured (26, 28) surface thereon and fabricated from a plastic material, such as PVC (col. 2 lines 58-68).  It would have been obvious to one having ordinary skill in the art at the time of the invention to employ a second teething element fabricated from a plastic material onto the blanket of Agopian as taught by Sofia in order to stimulate chewing and [to] massage the infants [sic] gum[.]  [F]urthermore it is well-known in the infant art that teething products are made of plastic materials and must be non-toxic.  (December 30, 2003 Office Action, page 2).  (UF 13).

Examiner Conley stated that "Agopian also fails to disclose the blanket constructed of flexible fabric material,"[2] but cited Sachetti for teaching a baby blanket made of fabric, stating:

Sachetti discloses a rectangular blanket 10 constructed of a flexible fabric material, such as cloth.  It would have been obvious to one having ordinary skill in the art at the time of the invention to construct the blanket of Agopian from a flexible fabric material in order to form a bedding article.  <u>Agopian discloses the claimed invention except for the fabric having a surface area greater than 25 square inches.  It would have been an obvious matter of design choice to have the dimensions stated above, since such a modification would have involved a mere change in the size of a component.  A change in size is generally recognized as being within the level of ordinary skill in the art.</u>[3]  Id. at 2-3 [emphasis added].  (UF 14).

Thus, Examiner Conley found the fabric material to be obvious from Agopian's "Teething Blanket" – especially in light of Sachetti's fabric "Cover." Examiner Conley noted that Agopian's showing of one teething area at one corner of the teething blanket, and Sofia's teaching of multiple different teething elements

---

[2]  Nonetheless, in a subsequent Office Action of October 21, 2004, Examiner Conley explained, "Although Agopian appears to disclose the blanket constructed of a flexible fabric material it is not specifically stated.  It is well known that infant blankets are constructed from a flexible fabric, however, Sachetti discloses a rectangular blanket 10 constructed of a flexible fabric material, such as cloth."  Office Action at page 12. (UF 15).

[3]  Agopian discloses a design for a teething blanket.  I believe it to be common knowledge that blankets, even ones for babies, are considerably larger than 25 square inches.

DEFENDANTS' MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT MOTIONS

along different parts of the periphery of the cloth item made it obvious that another teething area could be added to another corner (or periphery portion) of Agopian. (UF 16).

Examiner Conley did <u>not</u> find any patentable subject matter by means of the inherent recitals in claim 1 that (i) the first teething element must be fabricated from plastic or rubber and (ii) have at least one non-smooth textured surface on it, nor that (iii) it must be fabricated from a non-toxic material and (iv) be sized and dimensioned to be comfortably inserted and partially retained in an infant's mouth for teething purposes.  These were either taught in the prior art or common knowledge that teething elements were plastic or rubber, and obviously they had to be non-toxic.  Stating that they had to be sized for a baby also merely states the obvious, in that it is babies who teethe.  (UF 17).

After Munchkin had filed a notice of appeal, the Examiner issued another Office Action in which he withdrew the indication of allowability of claims 5–6, 8–9, 20–24, and 26.  He issued several double patenting rejections and relied extensively on Agopian as well as Sofia.  He reiterated his finding about Agopian and that Sofia and Sachetti would have made it obvious to a person of ordinary skill in the art to make a baby blanket for teething having an area of at least 25 square inches, with at least two teething areas located at respective peripheral positions of the blanket, the teething elements having two different textures, the teething elements being made of non-toxic plastic or rubber.  (See October 21, 2004 Office Action at pages 11-13). (UF 18).

With respect to the "permanently attached" recital, the Examiner said that "it would be unthinkable to provide a detachable teething device for this purpose."  He cited "common sense" and "to prevent the infant from choking." *Id.* at 12-13. (UF 19).

On February 3, 2005, Munchkin submitted an amendment noting that a

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

terminal disclaimer had already been filed with respect to the '962 patent.  (UF 20).

On May 5, 2005, Examiner Conley entered another Final Rejection, ruling that several of the claims were anticipated (completely taught) by Sofia, and that the remaining claims were obvious over Agopian in view of Sofia and Sachetti.  Sachetti was cited to show a flexible blanket.  The Examiner did not retreat from his findings concerning the obviousness of the blanket with two separate teething elements disposed along the periphery, including all of the features set forth in the pertinent claims.  (UF 21).  Only "hardness" claims 3 and 17 were judged to be allowable.  (UF 22).

With respect to the method claims, Examiner Conley relied in the last several Office Actions on Sofia as completely anticipating the claimed method.  In the last Office Action (May 5, 2005), he explained yet again:

> Claims 5-6, 8-9, 20-24, and 26 are rejected under 35 U.S.C. 102(b) as being anticipated by U.S. 5,993,285 to Sofia.
> Claim 5, Sofia discloses a method of teething, comprising steps of:
> (a) grabbing a teething article that includes a flexible fabric 12 material having a front side, a back side and a peripheral edge, with at least first and second separate teether elements (22a,22:,24a,24b) that are respectively secured to first and second portions of the peripheral edge, said first and second teething elements being fabricated from a material selected from a group consisting of plastic and rubber (col. 2 lines 58-68),
> (b) alleviating the discomfort that comes with teething by biting on the first teething element, and
> (c) further alleviating the discomfort that comes with teething by biting on the second teething element.  The Applicant's recitation "wherein said step of biting on the first teething element is performed with a first teething element that has a first hardness, and wherein said step of biting on the second teething element is performed with a second teething element that has a second hardness that is different from the first hardness" is not given patentable weight since the claim is a method claim and the whereby clause does not further limit the method.  The method itself is disclosed by Sofia. (May 5, 2005 Final Rejection, pp. 2-3).  (UF 23).

Method application claim 6 in this pending application called for biting on teething elements having two different patterns, but the Examiner ruled that this is taught by Sofia.  Figure 1 of Sofia shows different patterns of the teething elements.  (UF 24).  Application claim 8 was another method claim that the Examiner also had finally rejected on May 5, 2005, stating, as follows:

Claim 8, Sofia discloses a method comprising steps of:

(a) providing to an infant a teething article that includes a flexible fabric material 12 having a front side, a back side and a peripheral edge, with at least a first and second separate teether elements being secured to different first and second respective portions of the peripheral edge;

said first and second teething elements being fabricated from a material selected from a group consisting of plastic and rubber (col. 2 lines 58-68);

(b) permitting the infant to alleviate the discomfort that comes with teething by biting on the first teething element; and

(c) permitting the infant to further alleviate the discomfort that comes with teething by biting on the second teething element.  The Applicant's recitation wherein said step of biting on the first teething element is performed with a first teething element, that has a first hardness, and wherein said step of biting on the second teething element is performed with a second teething element that has a second hardness that is different from the first hardness" is not given patentable weight since the claim is a method claim and the whereby clause does not further limit the method.  The method itself is disclosed by Sofia. Id., pp. 3-4.  (UF 25).

Examiner Conley again rejected application claim 9 mentioning first and second different patterns as fully taught by Sofia.  (UF 26).

On November 4, 2005, Munchkin filed another notice of appeal to the PTO Board, but did not file an appeal brief at that time or at any later time, did not file any further amendments, and thus abandoned the application.  On June 13, 2006, the PTO issued a Notice of Abandonment of the patent application.  (UF 27).

**B.     Facts Relevant To Laches**

The following events are relevant to LNC's laches defense:

| Date | Event |
|---|---|
| July 2000 | LNC begins sale of Beatrix Potter Teething Blanket.  Sales include Walmart Stores.  (UF 32 - 34). |
| September 25, 2001 | The '962 patent issues.  (UF 35). |
| June 2003 | LNC begins sale of Precious Moments Teething Blanket. (UF 39). |
| September 2003 | Last sale of LNC Beatrix Potter Teething Blanket.  (UF 37) |
| March 2008 | Last sale of LNC Precious Moments Teething Blanket.  (UF 42) |
| September 30, 2013 | Munchkin files Complaint.  (UF 45). |

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

LNC's Beatrix Potter Teething Blanket ("BP Blanket") was on sale before the September 25, 2001 issuance of the '962 patent.  (UF 32).  In the year the '962 patent issued, some 40,000 BP Blankets were sold to Walmart.  (UF 33).  Sales of the BP Blanket continued until September 2003.  (UF 37).  In June 2003, LNC also began sale of the Precious Moments Teething Blanket ("PM Blanket").  (UF 39).  Sales of the PM Blanket continued until March 2008.  (UF 42).  Munchkin's current infringement allegations against LNC's Garanimals Teething Blanket and Nuby Teething Blankie, by necessity, sweep the BP & PM Blankets within the scope of the '962 patent claims.  Yet, Munchkin waited 12 years from September 25, 2001 until September 30, 2013 before it sued LNC for infringement.

Due to the passage of time, Munchkin has produced a total of only 479 pages of document in this action.  (UF 78).  There are a large swath of documents no longer in existence at Munchkin regarding its sales of products covered by the '962 patent.  There are no records of annual gross and net sales, gross and net profits, the identification of customers, communications involving the '962 patent, patent marking, and commercial success of the patented products.  (UF 65 – 74).  This is in addition to the loss of documents and fading memories that plague LNC in attempting to defend against this patent infringement claim.

The BP and PM Blankets were openly and notoriously sold on the shelves of national retailers such as Walmart.  These LNC products were in packaging showing all the features of the blankets and plainly identifying LNC as the manufacturer.  In this instance, well before filing the Complaint, Munchkin had at least constructive knowledge of the existence of both the BP and PM Blankets in the market.

## III.   ARGUMENT

"Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  *Reese v. TracFone Wireless, Inc.*, 2014 WL 1872175, *2 (C.D. Cal. May 9, 2014).  *See*

Fed. Rule Civ. P. 56(c).  *See also* Scheduling and Case Management Order, 6(d)(iv), p. 7 (D.I. 21) ("the court is familiar with the Rule [56] and with its interpretation under *Celotex* and its progeny.")

### A.    Invalidity for Obviousness

An issued patent is presumed valid.  35 U.S.C. § 282.  To overcome this presumption, the party challenging a patent's validity must prove the facts that establish invalidity by clear and convincing evidence.  *Moba, B.V. v. Diamond Automation, Inc.,* 325 F.3d 1306, 1319 (Fed. Cir. 2003).  According to 35 U.S.C. § 103(a), a patent is invalid if the "differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."  35 U.S.C. § 103(a); *KSR Int'l Co. v. Teleflex, Inc. et al.,* 550 U.S. 398, 127 S.Ct. 1727, 1729, 167 L.Ed.2d 705 (2007).  Further, obviousness at the time of the invention can be shown if "a person of ordinary skill in the art would have had reason to attempt to make the composition or device, or carry out the claimed process, and would have had a reasonable expectation of success in doing so." *PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007).

The Supreme Court has provided a framework for applying § 103, noting that "[w]hile the ultimate question of patent validity is one of law, the § 103 condition . . . lends itself to several basic factual inquiries."  *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) (internal quotes omitted).  Under Section 103: (1) the scope and content of the prior art are to be determined; (2) differences between the prior art and the claims at issue are to be ascertained; and (3) the level of ordinary skill in the pertinent art resolved.  *KSR*, 127 S.Ct. at 1729-30.  "Against this background the obviousness or nonobviousness of the subject matter is determined."  *Id.* at 1730.  In addition, "[s]uch secondary

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

PAYNE & FEARS LLP

ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *Id.* As indicia of obviousness or nonobviousness, these inquiries have relevancy. *Id.*

In addition, the Supreme Court has employed a "teaching, suggestion, or motivation" test ("TSM test"), [2] under which a patent claim is proved obvious "if the prior art, the problem's nature, or knowledge of a person having ordinary skill in the art reveals some motivation or suggestion to combine the prior art teachings." *KSR*, 127 S.Ct. at 1730. The TSM test should be applied as a "general principle" to aid courts in determining obviousness. *Id*. at 1741. The Supreme Court further emphasized the need for courts to value "common sense" over "rigid preventative rules." *Id*. at 1742-43.

**B.**   **Analysis**

*1.*   ***The Scope And Content of The Prior Art***

To determine the relevancy of prior art, the court must first determine if the prior art reference is within the scope of the inventor's endeavor. *See In re Wood*, 599 F.2d 1032, 1036 (C.C.P.A.1979). If it is not, the court applies a second test to determine if the nature of the problem confronting the inventor is within the scope of the prior art. *Id.* The scope of the prior art must be analogous to the asserted patent at issue. *See In re Clay*, 966 F.2d 656, 658-59 (Fed. Cir. 1992). Prior art is analogous if it is from the same "`field or endeavor,' even if it addresses a different problem, or, [is] not within the same field — if the [prior art] reference is `reasonably pertinent' to the particular problem with which the inventor is involved." *In re Conte*, 36 Fed.Appx. 446, 450 (Fed. Cir. 2002) (citing *In re Clay*, 966 F.2d at 658-59).

Here, there can be no serious dispute that all three of the Agopian, Sofia and Sachetti prior art patents are within the same field of endeavor as Munchkin's '962

DEFENDANTS' MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT MOTIONS

patent.  That is especially true because the Examiner cited these prior art references in rejection of the continuation claims.

A point that further supports invalidity is the fact that the PTO did not consider the most pertinent prior art when issuing the '962 patent.  Specifically, the Agopian patent was not considered by the PTO in the prosecution of the '962 patent claims, as is apparent from the "References Cited" section on the cover page of the '962 patent. The Supreme Court has held that the presumption of validity is "much diminished" when the PTO does not consider the most pertinent prior art.  *KSR*, 127 S.Ct. at 1745.

There is no genuine issue of material fact in dispute pertaining to the relevancy of the prior art.  The Agopian, Sophia and Sachetti patents constitute relevant prior art because they are "reasonably pertinent" to the problem that the inventor is attempting to solve.   In sum, the prior art addresses the problem of teething applications and suggests the use of teething elements affixed to the corners of a baby blanket.  Therefore, the inquiry pertaining to the scope of the prior art tips in favor of invalidating Munchkin's '962 Patent.

### 2.   *Differences Between The Prior Art And The Claimed Invention*

Under the second prong of the *Graham* analysis, differences between the prior art and the claims at issue should be determined from the vantage point of the hypothetical person with ordinary skill in the art.  *See Graham*, 86 S.Ct. 684 and *Velander v. Garner*, 348 F.3d 1359, 1363-64 (Fed. Cir. 2003).  "Differences between the prior art and the claimed invention are `ascertained by interpretation of the teachings of the prior art and the claims of the patent.'" CHISUM ON PATENTS, § 5.03[5], 5-239 (2003) (emphasis added).

The Federal Circuit has expressed the importance of referring to the actual claims in defining an invention: "The claims of the patent provide the concise formal definition of the invention.   They are numbered paragraphs which `particularly [point] out and distinctly [claim] the subject matter which the applicant regards as his

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

[or her] invention.'  It is to these wordings that [courts] must look to determine whether there has been infringement.  Courts can neither broaden nor narrow the claims to give the patentee something different than what he [or she] has set forth." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co*., 849 F.2d 1430, 1433 (Fed. Cir. 1988) (internal citations omitted) (citing *Autogiro Co. of Am. v. U.S.*, 181 Ct.Cl. 55, 384 F.2d 391, 395-96 (1967)).  Therefore, the Court should first look to the claims of the patent-in-suit, to determine if there are meaningful differences between a patent claims and the prior art.

"Claim construction is a question of law for courts to resolve."  *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995).  Here, the Court has held that very little interpretation is needed.  (*See* Exhibit J).  And based upon the Court's interpretation of the claims, there is little or no difference between the teachings of the prior art and the claims of the '962 patent, because the combination of the Agopian, Sophia and Sachetti patents teaches the full structure and function of each feature of '962 patent claims at issue.  Taken together, the Agopian, Sophia and Sachetti patents "fairly suggest" the same structure and function as claims 1, 2, and 5. *W.L. Gore & Assoc., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1550 (Fed. Cir. 1983)[4].

### a.   *Suggestion to Combine*

The Supreme Court stated that "rejections on obviousness grounds cannot be sustained by mere conclusory statements; instead there must be some articulated reasoning with some rational underpinning to support the legal conclusion." *KSR*, 127 S.Ct. at 1741 (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)).

---

[4]  Significantly, Munchkin had filed a Terminal Disclaimer as to the continuation application claims.  The meaning of a Terminal Disclaimer is that if a patent were to be granted on the pending application, such new patent rights would <u>not</u> extend beyond the term of the earlier-granted patent because the rights were not patentably distinct from one another.  MPEP § 804.02.  It was filed upon a rejection of the Examiner, which stated that the claims of the issued '962 patent were not patentably distinct from the pending application claims.  In filing the Terminal Disclaimer, Munchkin agreed with these rejections (and cannot now disagree) that the scope of the continuation claims was, for patentability purposes, indistinct from that of the issued patent claims.

-13-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

However, as the Court further articulated, "the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* at 1741; *see also Yamanouchi Pharm. Co.; Ltd. v. Danbury Pharm., Inc.*, 231 F.3d 1339, 1343 (Fed. Cir. 2000) (noting that "the suggestion to combine requirement stands as a critical safeguard against hindsight analysis and rote application of the legal test for obviousness."). Moreover, in *KSR*, the Supreme Court stated that to determine whether there was an apparent reason to combine the known elements in the way the patent claims, "[o]ften, it will be necessary to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and to the background knowledge possessed by a person having ordinary skill in the art." *KSR*, 127 S.Ct. at 1740-41.

In the present circumstances, the Examiner has stated in detail the logical reasons as to why one of ordinary skill in the art would combine the teachings of these references.    Indeed, Munchkin did not disagree and had fully acquiesced therein.

Additionally, the Supreme Court has found that "neither the particular motivation nor the avowed purpose of the patentee controls."  Instead, courts must look to the objective reach of the claim to determine if it extends to what is obvious, if so, the claim is invalid.  *KSR*, 127 S.Ct. at 1742; *see also* 35 U.S.C. § 103(a). Here, the prior art at issue suggested the combination of claims that make up the '962 patent.  This reasoning also satisfies any applicable TSM test because it explains how the prior art teachings and suggestions provide a reason to combine the prior art.

### b.    *Predictable Combination*

Caution is necessary when granting a patent that combines elements found in prior art.  *Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp.*, 340 U.S.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

147, 152; 71 S.Ct. 127, 95 L.Ed. 162 (1950).   "Such a combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."   *KSR*, 127 S.Ct. at 1731 (citing *United States v. Adams*, 383 U.S. 39, 50-52, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966)).   The important inquiry is "whether the improvement is more than the predictable use of prior-art elements according to their established functions."   *KSR*, 127 S.Ct. at 1740.

In *Adams*, however, the Supreme Court explained that "when a patent claims a structure already known in a prior art that is altered by the mere substitution of one element for another, known in the field, the combination must yield more than a predictable result."   *Adams*, 383 U.S. at 40, 86 S.Ct. 708.   The Supreme Court followed this logic in *KSR* when it held that it was obvious to substitute an electronic sensor for a mechanical sensor.   *KSR,* 127 S.Ct. at 1743-44.   The Court found that such a substitute was a predictable result. *Id.*

Here, the use of the multiple and different teething elements of Sofia, as affixed to the corners of the Agopian baby blanket accomplishes no new, different or unexpected result, and thus is *prima facie* obvious.   Therefore, Munchkin's use of these prior art teachings in the patented combination is indeed fully predictable.

Second, and insofar as Munchkin might attempt to argue that the references somehow "teach away from" the combination of their respective teachings, in *KSR*, the Supreme Court said that "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill."   *KSR*, 127 S.Ct. at 1740 (emphasis added).   Here, the Sofia patent was directed to providing a variety of teething elements of different textures, and was directly substitutable into the baby blanket structure of Agopian.

In addition, the Supreme Court makes it clear that obviousness may be found where multiple prior art references are available to a person of ordinary skill in the

art; even if, the "primary purpose" of the prior art differs from that of the patent-in-suit. *KSR*, 127 S.Ct at 1742 (noting that "in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle"). Accordingly, the claimed invention's use of the features of the Agopian, Sophia and Sachetti patents together in combination, was a predictable step. Therefore, the inquiry pertaining to the differences between the prior art and the claims at issue tips further in favor of invalidating Munchkin's '962 Patent.

### 3.   *The Level of Ordinary Skill in The Pertinent Art*

The person of ordinary skill in the art is a hypothetical person who is presumed to have known the relevant art at the time of the invention. Factors that may be considered in determining the level of ordinary skill in the art may include: (1) "type of problems encountered in the art;" (2) "prior art solutions to those problems;" (3) "rapidity with which innovations are made;" (4) "sophistication of the technology; and" (5) "educational level of active workers in the field." *In re GPAC,* 57 F.3d 1573, 1579 (Fed. Cir. 1995). "In a given case, every factor may not be present, and one or more factors may predominate." *Id.  See also Custom Accessories, Inc. v. Jeffrey-Allan Indust., Inc.,* 807 F.2d 955, 962 (Fed. Cir. 1986) and *Environmental Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 696 (Fed. Cir. 1983). "A person of ordinary skill in the art is also a person of ordinary creativity, not an automaton." *KSR,* 550 U.S. at 421. "[I]n many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420. "[T]he inferences and creative steps that a person of ordinary skill in the art would employ" may also take into account. *Id.* at 418.

The Federal Circuit has stated that PTO Examiners are "persons of scientific competence in the fields in which they work" and that their findings are "informed by their scientific knowledge, as to the meaning of prior art references to persons of ordinary skill in the art." *In re Berg,* 320 F.3d 1310, 1315 (Fed. Cir. 2003). In

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

addition, Examiners "are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art." *PowerOasis, Inc. v. T-Mobile USA, Inc.,* 522 F.3d 1299 (Fed. Cir. 2008) (quoting *Am. Hoist & Derrick Co. v. Sowa & Sons,* 725 F.2d 1350, 1360 (Fed. Cir. 1984). Also, *see* MPEP § 2141 for a discussion of the level of ordinary skill.

### 4.   *Secondary Considerations*

Such considerations as commercial success, long felt but unsolved needs, and the failure of others to invent are relevant to the obviousness inquiry.  *Graham*, 383 U.S. at 17-18, 86 S.Ct. 684.   However, these considerations do not control the obviousness inquiry.  *See Richardson-Vicks v. Upjohn Co.*, 122 F.3d 1476, 1483 (Fed. Cir.1997) (citing *Newell Cos., Inc. v. Kenney Mfg. Co.,* 864 F.2d 757, 768 (Fed. Cir. 1988)).   Instead, they assist the Court in ascertaining the extent of any objective indicia of non-obviousness.   Here, there would appear to be no credible evidence on any of these "secondary considerations.

In any event, in *Sjolund v. Musland,* 847 F.2d 1573, 1582 (Fed. Cir. 1988), the Federal Court stated that commercial success "is relevant only if it flows from the merits of the claimed invention."   Therefore, the party asserting commercial success has the burden of proving a "nexus between the commercial success and the claimed invention."  *See Simmons Fastener Corp. v. Ill. Tool Works, Inc*., 739 F.2d 1573, 1575 (Fed .Cir. 1984).   Sufficient "prima facie evidence of nexus is established if there was a commercial success and if the invention disclosed in the patent was that which was commercially successful." *Ryko Mfg. Co. v. Nu-Star, Inc*., 950 F.2d 714, 719 (Fed. Cir. 1991).

Here, even if secondary consideration evidence were present, it must be sufficient to override the determination of obviousness based on the primary considerations.   In sum, a Court is only required to review the secondary considerations in light of the other *Graham* factors.   Accordingly, the lack of any

-17-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

such evidence from Munchkin fails to overcome LNC's strong showing of obviousness.

Ultimately, the judgment of patent validity is a legal determination. *Graham,* 383 U.S. at 17, 86 S.Ct. 684. Summary judgment is appropriate when, as here, the content of the prior art, the scope of the patent claims, and the ordinary skill in the art are not in material dispute, and obviousness is clearly shown.

### C. Munchkin Had Constructive Knowledge of LNC's Alleged Infringement of The '962 Patent More Than Six Years Before Filing The Complaint Giving Rise to a Presumption of Laches

Laches bars Munchkin's relief against LNC for alleged infringement of the '962 patent before the Complaint's filing on September 30, 2013. The length of Munchkin's delay in suing LNC is easily long enough to give rise to a presumption of laches in LNC's favor. It is, therefore, presumed that Munchkin's delay is both unreasonable and inexcusable and that the delay has prejudiced LNC in the presentation of a full and fair defense against Munchkin's patent infringement claim.

It is well settled that laches requires proof of two factors:

1.     the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonable should have known of its claim against defendant; and

2.     the delay operated to the prejudice or injury of the defendant.

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc).

Because Munchkin delayed filing the Complaint by well more than six years after it is chargeable with constructive knowledge of LNC's allegedly infringing activities, "the underlying critical factors of laches are presumed." *Id.*, p. 1035. "The *Aukerman* presumption places a burden of production on the patentee." *Hall v. Aqua Queen Manufacturing, Inc.*, 93 F.3d 1548, 1553 (Fed. Cir. 1996). If Munchkin fails to come forward with "*either* affirmative evidence of lack of prejudice *or* of a legally cognizable excuse for its delay in filing suit, the two facts of unreasonable

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-18-

delay and prejudice '*must* be inferred.'"   *Hall*, *supra*, p. 1553 (citing *Ackerman*, *supra*, p.1037) (emphasis original).

A presumption of laches arises upon "proof that the patentee delayed filing suit for more than six years after actual or constructive knowledge of the defendant's alleged infringing activity." *Aukerman*, *supra*, pp. 1035-36.  "The period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendants alleged infringing activities to the date of suit." *Id.*, pp. 1032.

Munchkin accuses only the Nuby Teething Blankie and the Garanimals Teething Blanket of infringing the '962 patent.  However, the basis upon which Munchkin alleges infringement of the '962 patent by the Nuby Teething Blankie and the Garanimals Teething Blanket also extends to two earlier LNC teething blankets on sale between August 2000 through March 2008 - the BP Blanket and the PM Blanket (collectively, "BP & PM Blankets").

Because Munchkin is chargeable with constructive knowledge of LNC's sales of both the BP & PM Blankets more than six years before filing the Complaint, laches is presumed.

### 1.  *LNC's BP & PM Blankets Were Openly Displayed in Stores to Potential Customers*

Munchkin has objected and refused to answer LNC's interrogatories on whether the BP & PM Blankets infringe the '962 patent.  (UF 47 - 54).  A description of the BP blanket and its packaging is found at ¶¶ 84 – 92 of the Manzo Decl.[5]  A description of the PM Blanket and its packaging is found at ¶¶ 93 – 96 of the Manzo Decl.  *See also* Morse Decl., ¶¶4 and 10, Ex. 1 & 3.[6]  Packaging in which both the BP & PM Teething Blanket were sold conspicuously identified LNC as the source of

---

[5]  Supplemental Opening Expert Report of Edward D. Manzo and Declaration in support of Defendants' Summary Judgment Motion ("Manzo Decl.").

[6]  Declaration of Hartwell P. Morse, III in Support of Defendants' Summary Judgment Motions ("Morse Decl.").

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213)439-9911

these products. Manzo Decl., ¶ 100. The packaging for both products displayed one or more of the four teething elements affixed to each corner of the blanket. *Id.*, ¶¶ 86 and 94. The front of each package, moreover, identified that the product "is a 'Teething Blanket," had "Four Textured Teething corners," and is 'Easy for baby to grip.'" *Id.*, ¶ 101.

LNC's BP & PM Blankets were sold to national retailers. The BP Blanket, for example, was sold to Walmart beginning in 2000. (UF 33 - 34). The PM Blanket was sold to Modecraft (Burlington Coat Factory) and Unique Photo, Inc., a wholesale distributor with retail customers such as Meijers. (UF 40). The BP & PM Blankets were openly displayed to potential customers on store shelve in an area devoted to infant and baby products alongside competitors' products. In other words, the display of the BP & PM blankets in the stores "was open and notorious." Manzo Decl., ¶ 82.

With the BP & PM Blankets, what you see is what you get. Any visitor to a national retailer could see the BP & PM Blankets on display. Or, in the alternative, any Munchkin salesperson visiting a national retailer could see the BP & PM Blankets on the shelves, purchase them and inspect them for infringement of the '962 patent. With respect to both the BP & PM Blankets, the packaging plainly identified LNC as the source for these products. Manzo Decl., ¶ 100. *See* Morse Decl., Exs. 1 & 3.

The display of LNC's BP & PM Blankets at stores was open, notorious and pervasive such that Munchkin would suspect infringement. *See Hall*, *supra*, 93 F.3d at 1553 and Manzo Decl., ¶ 82.

### 2. *LNC's Sale of The BP & PM Blankets in The Market, Including in Walmart, Put Munchkin on Constructive Notice of LNC's Allegedly Infringing Activity*

There is no ostrich defense in laches. Munchkin cannot stick its head in the sand and avoid policing its '962 patent rights when the BP & PM Blankets were

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

openly and notoriously displayed and sold in stores that also offered Munchkin's products.

"The equitable nature of laches does not demand actual knowledge of infringement to trigger." *Reese v. TracFone Wireless, Inc.,* 2014 WL 1872175, 4 (C.D. Cal. May 9, 2014) (Granting summary judgment of laches involving a presumption of laches). Due to the passage of time, Munchkin has no documents evidencing that it had actual knowledge of the BP & PM Blankets in the marketplace. Nor is there any documentary evidence that Munchkin ever contacted LNC about the '962 patent before filing the Complaint on September 30, 2013. (UF 72) Although evidence of actual knowledge, if it existed at all, is lost to time, Munchkin is still subject to constructive knowledge of the BP & PM Blankets in the marketplace.

"The availability of delay based on constructive knowledge of the alleged infringer's activities imposes on patentees the duty to police their rights." *Wanlass v. General Electric Co.,* 148 F.3d 1334, 1338 (Fed Cir. 1998). Ignorance will not insulate the patentee "from constructive knowledge of infringement in appropriate circumstances." *Id.* Such appropriate circumstances giving rise to a duty to police its rights includes "'pervasive, open, and notorious activities' that a reasonable patentee would suspect were infringing." *Id.* (citing *Hall, supra,* p. 1548). In addition:

> (S)ales, marketing, publication, or public use of a product similar to or embodying technology similar to the patented invention, or published descriptions of the defendant's potentially infringing activities, ***gives rise to a duty to investigate whether there is infringement.***

*Id.* (emphasis added).

Here, the existence of the BP and PM Blankets on the shelves of national retailers is the type of pervasive, open and notorious activity that would put Munchkin on notice to investigate potential infringement of the '962 patent. The BP

-21-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

Blanket was sold in Walmart, a Munchkin customer, before the issuance of the '962 patent and for almost two years afterwards. (UF 38). More than 40,000 BP Blankets were sold to Walmart in 2001 alone. (UF 34). *See Reese v. TracFone Wireless, Inc.*, 2014 WL 1872175, *4 (C.C. Cal. May 9, 2014) (constructive knowledge of infringement based, in relevant part, on undisputed evidence that allegedly infringing cellular devices "were sold by well-known nationwide retailers such as Wal-Mart, CVS, and Dollar General").

Constructive knowledge of infringement may also be imputed to Munchkin even where it "has no actual knowledge of the sales, marketing, publication, public use, or other conspicuous activities of potential infringement if these activities are sufficiently prevalent in the inventor's field of endeavor." *Wanlass, supra*, 148 F.3d at 1338. There is no question that the sale of the BP & PM Blankets fit squarely within Munchkin's field of endeavor – the sale of infant and baby products.

Recognizing that a patentee, "motivated by his interest in recovering for and preventing infringement," is in the "best position to know the scope of their patent protection and, therefore, also to know likely places to find infringement," it is proper to place the burden upon patentee "to seek out infringers." *Id.* Knowledge is imputed "when opportunity and interest, combined with reasonable care, would necessarily impart it." *Wollensak v. Reither*, 115 U.S. 96, 99, 5 S.Ct. 1137 (1885).

The open, notorious and pervasive sale of the BP & PM Blankets in the very retail environment where Munchkin's products were also sold is more than sufficient to impute constructive knowledge of LNC's infringing activities as early as the September 25, 2001 issuance of the '962 patent.

### 3.  *Munchkin's Previous Assertion of IP Rights Against LNC*

LNC's own experience with Munchkin confirms that Munchkin vigilantly polices its intellectual property rights in the market. For example, in 1999, two years before the '962 patent issued, Munchkin filed a patent infringement lawsuit against

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

LNC styled *Munchkin, Inc. v. Luv n' care, Ltd*, United States District Court for the Central District of California, Civil Action No. 2:99-cv-06513 over bottle and nipple brush sets. (UF 29 ). Munchkin dismissed the action without prejudice shortly after receiving correspondence from LNC's counsel establishing the invalidity of Munchkin's patent-in-suit. (UF 30 & 31).

On July 11, 2005, Munchkin sent a cease and desist letter to LNC charging infringement of U.S. Patent No. 6,865,815 involving a spoon product. (UF 43) LNC wrote back on August 15, 2005 providing compelling evidence that the patent-in-suit was invalid. (UF 44) A lawsuit was never filed.[7]

In light of this additional evidence of policing and enforcement of its intellectual property rights against LNC both before and after the issuance of the '962 patent, it is reasonable to impute Munchkin with knowledge of the presence of the BP & PM Blankets in the market.

### 4. More Than Six Years Have Elapsed Since Munchkin Had Constructive Knowledge of The Sales of LNC's BP & PM Blankets

LNC's patent expert, Mr. Manzo, has compared the BP & PM blankets to the subject matter of the '962 patent and identified the features of both products. Manzo Decl., ¶¶ 97 and 102 – 103. Based on his "observations of easily-discernable and conspicuous features," Munchkin "had at least constructive knowledge that subject matter of that ['962] patent was on sale in the United States by LNC as of 2001." *Id.*, ¶104. Munchkin is "chargeable with at least constructive notice of LNC's sales" of the BP Blanket "beginning in 2001" and LNC's PM Blanket "beginning in 2003." *Id.*, ¶ 114. Because more than six years have passed since Munchkin is chargeable

---

[7]  In addition to the present action, Munchkin sued LNC for trademark infringement and unfair competition on September 16, 2013 in an action styled *Munchkin, Inc. v. Luv n' care, Ltd., et al.*, U.S. District Court for the Central District of California, Civil Action No. 13-cv-06787.  Munchkin recently filed a First Amended Complaint adding claims for trade dress infringement and patent infringement on October 2, 2014.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

with constructive knowledge of LNC's sales of the BP and PM Blankets, "harm to LNC due to the delay is presumed, the delay is presumptively unreasonable and inexcusable, and Munchkin is properly chargeable with laches." *Id.*, ¶ 115.

### 5. *LNC Has Suffered Prejudice on Presenting a Full And Fair Defense of Laches*

With the presumption, LNC is not required to address the prejudice factor. Indeed, LNC can remain "*utterly mute* on the issue of prejudice and nonetheless" prevail. *Hall*, *supra*, 93 F.3d at p. 1554 (emphasis original). "It is not Defendant's responsibility, as Plaintiffs argue, to demonstrate economic or evidentiary prejudice following the finding that Defendant is entitled to the laches presumption." *Eben Co., LLC v. Schaefer*, 2013 WL 5727421, *9 (S.D. Cal. Oct. 22, 2013) (granting summary judgment of laches where Plaintiff failed to overcome presumption of laches). Evidentiary prejudice exists, nonetheless, in the form of lost records and fading memories of long past events that interfere with LNC's ability to present a full and fair defense on the merits.

Of significant relevance for this summary judgment motion is the fact that prejudice also extends to LNC's ability to present a full and fair laches defense. Many of the documents pertinent to the laches defense are no longer available from Munchkin.

As Munchkin's counsel confirmed, "(t)he products that are the focus of the majority of your requests are 15+ years old, so there simply are not many, if any, documents remaining at Munchkin." (UF 58). In total, Munchkin has produced 479 pages of documents. (UF 78) Missing from Munchkin's paltry document production are documents relevant to LNC's laches defense including: (1) Munchkin's actual knowledge of the presence in the marketplace of LNC's BP & PM Blankets; (2) communications with LNC regarding the '962 patent (UF 72); (3) Munchkin's sale of products covered by the '962 patent (UF 65-68) and; (4) and relating to the commercial success of Munchkin's patented products. (UF 74).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

By way of example, Munchkin no longer has documents showing where, when and to whom it sold products covered by the '962 patent.  (UF 69).  LNC, therefore, has no way to show where Munchkin's products covered by the '962 patent were actually sold.  If LNC's and Munchkin's teething blanket products were sold to the same retailers, this would provide further proof that Munchkin knew or should have reasonably known about LNC's allegedly infringing activities such that it was under a duty to investigate.  But, of course, Munchkin no longer has these documents.

In the absence of relevant documents, LNC also has no way to rebut or challenge any sworn testimony that Munchkin may present supporting a reasonable excuse for the delay in bringing suit.  There are no contemporaneous, corroborating documents to substantiate Munchkin witness testimony or available for use in cross-examination.  It would be the very definition of prejudice to allow unsubstantiated testimony from Munchkin purporting to explain away the unreasonable and inexcusable delay in filing suit against LNC.

There are no genuine issues of material fact precluding a presumption of laches in LNC's favor.

## IV.   CONCLUSION

Based on the above analysis, Defendant has proven invalidity by clear and convincing evidence and that there is a presumption of laches in LNC's favor.  Accordingly, Defendants' Summary Judgment Motions should be granted, and the same is respectfully urged.

DATED: September ___, 2014          PAYNE & FEARS LLP

By:   _____/s/ Eric M. Kennedy_____
                ERIC M. KENNEDY

Attorneys for Defendants LUV N' CARE, LTD. and ADMAR INTERNATIONAL, INC.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1

## <u>CERTIFICATE OF SERVICE</u>

2

    I hereby certify that on October 27, 2014, a true and correct copy of the

3

foregoing DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT MOTION was served, via electronic mail, upon Plaintiff's Counsel of Record at the following email address:

4

5

R. Cameron Garrison
**LATHROP & GAGE LLP**

6

2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618

7

*CGarrison@LathropGage.com*

8

                            _____
                            Counsel for Defendants Luv n' care, Ltd.

9

                            and Admar International, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT MOTION

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911