Daniel M. Livingston, Bar No. 105981
dml@paynefears.com
Eric M Kennedy, Bar No.
emk@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
Jamboree Center, 4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile:  (949) 851-1212

Robert M. Ward,
Georgia Bar No. 775401 (*Admitted Pro Hac Vice*)
rward@dilworthIP.com
DILWORTH IP
The Pinnacle Building
3455 Peachtree Road North East, 5th Floor
Atlanta, GA 30326
Telephone: (203) 220-8496
Facsimile:  (203) 220-8497
www.dilworthIP.com

Attorneys for Defendants
LUV N' CARE, LTD. and
ADMAR INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MUNCHKIN, INC., a Delaware corporation,<br><br>             Plaintiff,<br><br>       v.<br><br>LUV N' CARE, LTD., a Louisiana corporation, and ADMAR INTERNATIONAL, INC., a Delaware corporation,<br><br>             Defendants. | Case No. CV13-7228-ODW (AGRx)<br><br>**Assigned to Hon. Otis D. Wright II**<br><br>**SUPPLEMENTAL OPENING EXPERT REPORT OF EDWARD D. MANZO AND DECLARATION IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION ON LACHES** |

80. I am the same Edward D. Manzo who submitted an opening expert witness report in the above-captioned matter. This report supplements my earlier report which is dated October 6, 2014 and is in support of LNC's motion for summary judgment based on laches. This supplemental report explains how the plaintiff ("Munchkin") failed to act in a timely fashion in respect of products sold in the United States beginning by 2001, raising a presumption of laches, which is an equitable defense to patent infringement. In preparing this report, I have now inspected documents marked with production numbers LNCPA000043- LNCPA000066 and the two physical products identified in paragraph 81-103 hereto.

81. On October 23, 2014, I received physical specimens of two teething blankets with their packaging. These correspond to LNCPA000043-44 and LNCPA000053-54. I am informed that these are specimens of teething blankets sold by co-defendant LUV N CARE ("LNC") to retailers in the United States, which retailers sold these teething blankets to the general public. The blanket corresponding to LNCPA000043-44 is referred to as a Beatrix Potter "Peter Rabbit" Teething Blanket, and the other is referred to as a Precious Moments teething blanket.

82. Based on information and belief, the display (to the public) of these teething blankets at retailers was open and notorious.

83. Based on information and belief following my review of documents bearing production nos. LNCPA000046-52, the Beatrix Potter "Peter Rabbit" teething blanket was on sale to the public at Wal-Mart stores in the United States before the '962 patent issued on September 25, 2001, and sales continued through 2003.

84. I took the following photographs of the specimen I received to show the Beatrix Potter "Peter Rabbit" Teething Blanket and its packaging:



85. Here is a closer view of the package front for the Beatrix Potter "Peter Rabbit" Teething Blanket:

-3-
SUPPLEMENTAL OPENING EXPERT REPORT OF EDWARD D. MANZO and DECLARATION IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION ON LACHES

86. I took the following photograph to show the teething elements at two of the four corners of the Beatrix Potter "Peter Rabbit" Teething Blanket. This photograph also shows the woven nature of the fabric portion of the blanket along with a wrap-around edging material. In addition, this photograph shows an undulation in the blanket just inside the blue teething structure, exhibiting the flexibility of the blanket:



87. My next photograph shows two other corners of the same Beatrix Potter "Peter Rabbit" Teething Blanket. I placed a ruler diagonally across the corner so that the size of the (yellow) teething portion would be observed. As can be seen, it extends a distance between 3.5 and 4.0 inches across the corner:

-4-
SUPPLEMENTAL OPENING EXPERT REPORT OF EDWARD D. MANZO and DECLARATION IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION ON LACHES



88. The following photograph shows the rear of the package for the Beatrix Potter "Peter Rabbit" Teething Blanket:



89. Below is a close up of the photograph from the back of the package:

PAYNE & FEARS LLP
ATTORNEYS AT LAW
JAMBOREE CENTER, 4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100



90. The large color photograph reproduced in paragraph 89 shows a baby holding the Beatrix Potter "Peter Rabbit" Teething Blanket with two hands so that one corner of the blanket is in the baby's mouth. I noticed also that the blanket is draped, further showing that it is flexible. I confirmed its flexibility by physical inspection and manipulation and found that each of the two blankets is indeed flexible.

91. The back of the package includes text to the left of the photograph shown in paragraph 89. The following photograph shows this text:

-6-
SUPPLEMENTAL OPENING EXPERT REPORT OF EDWARD D. MANZO and DECLARATION IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION ON LACHES

> Teething Blanket
>
> Comforting blanket provides a soft cloth surface for baby to hold. The four colorful corners provide a soft textured surface for soothing relief of tender gums and new teeth. Baby can easily grasp fabric and place teether in mouth without help.

92. This text reads as follows:

> "Comforting blanket provides a soft cloth surface for baby to hold. The four corners provide a soft textured surface for soothing relief of tender gums and new teeth. Baby can easily grasp fabric and place teether in mouth without help."

93. I took the following photographs to show the Precious Moments Teething Blanket and its packaging. These correspond to LNCPA000053-54:



-7-
SUPPLEMENTAL OPENING EXPERT REPORT OF EDWARD D. MANZO and DECLARATION IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION ON LACHES

94. Here is a closer view of the yellow teething element at one of the blanket corners, as seen through the packaging:



95. The following photograph shows the bottom left corner of the front of the packaging, showing Luv n' care as the source and mentioning four textured teething corners:



96. Here is a photograph of the rear of the Precious Moments Teething Blanket package (containing the blanket):

-8-
SUPPLEMENTAL OPENING EXPERT REPORT OF EDWARD D. MANZO and DECLARATION IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION ON LACHES



97. I have inspected these two teething blankets and their packaging and compared the teething blankets to the subject matter of U.S. Patent 6,292,962 (Exhibit B to my first report).

98. I observed that the packaging for the Beatrix Potter "Peter Rabbit" Teething Blanket bears a copyright notice stating, "© 2001 Luv n' care." It also bears another copyright notice stating, "PETER RABBIT ™ © Frederick Warne & Co. 2001." These legends are consistent with a market introduction in 2001.

99. On information and belief following my review of documents bearing production nos. LNCPA000055-66, the Precious Moments Teething Blanket was introduced in 2003 before the Beatrix Potter "Peter Rabbit" teething blanket was phased out. On information and belief, the Precious Moments Teething Blanket was sold until at least 2008. I observed that the packaging

for the Precious Moments Teething Blanket bears a copyright notice stating, "© 2003 Precious Moments, Inc., Licensee Luv n' care." This is consistent with a 2003 product introduction.

100. Each of these specimens conspicuously identifies Luv n' care as the source on both the front and the back of the boxes. The back of each box also gives the address for Luv n'care as P.O. Box. 6050, Monroe, Louisiana 71211 USA.

101. Each front of the packages for both blankets states conspicuously that the product is a "Teething Blanket." Each package front states, "Four Textured teething corners," and "Easy for baby to grip."

102. Each of these two teething blankets that I inspected and which is shown herein contains the following features:

  a) The blanket is woven of fabric and is flexible. It is generally flat.
  b) The blanket appears to measure roughly one foot by one foot, so it would have a surface area of about 144 square inches for the front or the back, *i.e.*, a surface area in excess of 25 square inches.
  c) The blanket has four corners.
  d) Each of the four corners has a respective teething element attached to it. Each teething element is connected to the fabric at least by visible stitching. The teething elements appear to be not easily removable, if at all. On each of the blankets I observed four teething elements. Of these, one is pink, one is baby blue, one is yellow, and one is light green. The teething elements of the Precious Moments blanket appear to be lighter shades of the same four colors used on the Beatrix Potter Peter Rabbit Teething Blanket.
  e) In terms of size and placement, each teething element wraps over its respective corner from one side of the blanket to the other side of the

SUPPLEMENTAL OPENING EXPERT REPORT OF EDWARD D. MANZO and DECLARATION IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION ON LACHES

blanket. Each teething element spans a diagonal of about 3.5 to 4.0 inches. Each teething element has a maximum width (on one side of the blanket) of about one and three-eighths inches measured from the corner to the nearest edge of the teething element.

    f) Each teething element is pliant and rubbery to my touch. They appear to be made of plastic or rubber.

    g) Each teething element contains three, distinct, textured, non-smooth teething surfaces – (i) broad gently curved lines, (ii) dots, and (iii) small, very curved lines.

    h) Based on at least the photograph shown in paragraphs 88-89 above showing the rear of the packaging of the Beatrix Potter Peter Rabbit teething blanket where a baby has one of these teething elements in her mouth, and without any look of discomfort on her face, I believe that these teething elements are sized and dimensioned to be (at least partially) inserted comfortably into an infant's mouth and used for teething.

103. The photograph on the back of the package of Beatrix Potter Peter Rabbit teething blanket shows a method of teething being used.

    i) The infant is grabbing a teething article that includes flexible fabric material. The photograph itself shows that the blanket is flexible because it is shown with folds from where it drapes down from the child's hands. That draped shape is not the shape the blanket has inside the package.

    j) One can see four different corners in the photo.

    k) One can see three distinct teething elements on each corner of the blanket.

-11-
SUPPLEMENTAL OPENING EXPERT REPORT OF EDWARD D. MANZO and DECLARATION IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION ON LACHES

l) One can see through a window on the front of the package that the teething elements appear to be permanently connected to the blanket by stitching.

m) A legend on the rear of the package for the Beatrix Potter Peter Rabbit teething blanket says that the teether edge is Pur-tex®. I searched the U.S. Trademark Office records and discovered that a trademark application serial number 75379986 was filed on October 27, 1997 in the name of (co-defendant) Admar International, Inc. for that trademark. The application specified that the goods to which the mark applied were "Infant-feeding bottles and cups for holding liquids; and synthetic plastic materials related thereto."

n) The photograph suggested to me that teething discomfort was being alleviated, and I believe that prospective purchasers would understand that such would be the result of using the teething blanket where the baby bites on any of the four teething elements.

104. Based on these observations of easily-discernable and conspicuous features, Munchkin, Inc. as the assignee (according to the face of U.S. Patent 6,292,962) had at least constructive notice that subject matter of that patent was on sale in the United States by LNC as of 2001.

105. Based on the existence of the above-captioned lawsuit alleging patent infringement, I have assumed that LNC did not have a patent license from Munchkin under the '962 patent. If such a license existed, I am not aware of it.

106. Munchkin, Inc. should have policed the market for items placed on sale that possibly infringed Munchkin's patents and should have given notice to any manufacturer or seller that appeared to be using the subject matter of any Munchkin patent.

-12-
SUPPLEMENTAL OPENING EXPERT REPORT OF EDWARD D. MANZO and DECLARATION IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION ON LACHES

107. When an owner of a patent on a product fails to sue someone for patent infringement for six years, the patent statute at 35 U.S.C. §286 relieves the alleged infringer from liability for sales and manufacturing that occurred more than six years before suit is filed. 35 USC §286, first paragraph, states: "Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."

108. The truncation of damages is not the only consequence of a patent owner's failure to take action. Because it is fundamentally unfair to allow a patent owner (i) to sleep on its rights while an unlicensed entity makes and/or sells products in the open marketplace, (ii) which products embody the subject matter described in the patent such that the patent owner would reasonably think is an infringement, and then (iii) allow the patent owner to seek damages for alleged infringement for the entire period, including the period during which the patent owner slept on its rights, the equitable defense of laches gives relief to the alleged infringer after a sufficient period of time.

109. With respect to the amount of time, the delay is measured from the time that the patent owner knew or should have known of the suspect activities. In a case such as this where the product was sold at least at Wal-Mart stores, plaintiff Munchkin either knew of should have known of the sales by LNC when sales commenced, which, on information and belief following my document inspection noted above, I understand to be in 2001, prior to the patent issue date of September 25, 2001.

110. The period of delay extends up to the date when the patent owner files a suit.

-13-
SUPPLEMENTAL OPENING EXPERT REPORT OF EDWARD D. MANZO and DECLARATION IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION ON LACHES

111. I understand that under the law as it exists in October 2014 and did exist from at least as early as the 1990s, laches is presumed after a period of six years of delay by a patent owner failing to sue an alleged infringer. That means that one presumes that the manufacturer or seller, as the case may be, is presumed to have been harmed by the patentee's unreasonable delay in enforcing its patent rights. It also means that the delay is presumed to be inexcusable and prejudicial (causing harm because of the delay).

112. After a delay of the presumptive period, the patent owner must show that the delay was excusable or not prejudicial. One consequence of laches is to absolve the alleged infringer of liability for damages prior to suit being filed.

113. The six year period for presuming laches is merely presumptive. It is not the only way that laches arises. An accused infringer can also prove harm because of the delay by the patent owner in asserting infringement. The period of inaction can be far less than six years.

114. Given the open and notorious, non-secret sales by LNC and its retailer customers in the United States of the teething blankets shown herein, it is my opinion that:

o) Munchkin had a duty to police the marketplace for possible patent infringements, and Munchkin is chargeable with at least constructive notice of LNC's sales of LNC's Beatrix Potter "Peter Rabbit" Teething Blanket beginning in 2001 and LNC's "Precious Moments teething blanket" beginning in 2003;

p) The features of the LNC teething blankets shown herein are such that Munchkin should have investigated whether these infringed the '962 patent;

-14-
SUPPLEMENTAL OPENING EXPERT REPORT OF EDWARD D. MANZO and DECLARATION IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION ON LACHES

q) Either Munchkin failed to investigate, or Munchkin concluded that there was no infringement by LNC of any valid claim (if any exists).

r) In the event that Munchkin was too busy suing other alleged infringers to undertake litigation against LNC, it was incumbent on Munchkin to notify LNC in writing of its intent to sue LNC upon the conclusion of other pending litigation; and I am unaware of any such notice having been provided.

115. I understand that Munchkin did not sue LNC for alleged infringement of the '962 patent until 2013. In my opinion, Munchkin delayed unreasonably in suing LNC, and because the delay far exceeds six years, harm to LNC due to the delay is presumed, the delay is presumptively unreasonable and inexcusable, and Munchkin is properly chargeable with laches.

*Edward Manzo*

Edward D. Manzo
October 24, 2014

-15-
SUPPLEMENTAL OPENING EXPERT REPORT OF EDWARD D. MANZO and DECLARATION IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTION ON LACHES